IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LEYDA MULERO ABREU, *et al.*,

    **Plaintiffs,**

        **v.**

SERGEANT LUIS J. OQUENDO-RIVERA, *et al.*,

    **Defendants.**

CIVIL NO. 09-1652 (FAB)

## OPINION AND ORDER[1]

BESOSA, District Judge.

On November 17, 2009, Leyda Mulero-Abreu ("Mulero"), her husband, Victor Reyes-Raspaldo ("Reyes"), and their conjugal partnership, (collectively referred to as "plaintiffs"), filed an amended complaint against defendants[2] both in their personal and

---

[1] Christine D'Auria, a second-year student at Northwestern Law School, assisted in the preparation of this Opinion and Order.

[2] The current defendants are: Sergeant Luis J. Oquendo-Rivera; Sergeant Rosaura Lasanta; Vilma Fernandez; Leovigildo Vazquez-Bonilla; Milton Oquendo; Jose Figueroa-Sancha; Jose Marrero-Rivera; Jose Ocasio-Garcia; Capt. Mario Rivera; Laura Rechani; Luis A. Trujillo-Rodriguez; Jose Luis Ramirez-Ramos; Oliberto Rivera-Rivera; and five unknown defendants sued in their official and personal capacities "John Doe," "Richard Roe," "Peter Roe," "Nancy Doe," and "Carl Roe." (Docket No. 36.)

On May 3, 2010, defendants filed a separate motion to dismiss defendants Benjamin Rodriguez, Juan Carlos Martinez, the Puerto Rico Police Department, and Pedro Toledo-Davila pursuant to FED. R. CIV. P. 4(m). (Docket No. 31.) The Court granted the motion on May 17, 2010, dismissing Benjamin Rodriguez, Juan Carlos Martinez, the Puerto Rico Police Department, and Pedro Toledo-Davila as defendants in this case. (Docket No. 36.) As such, the Court **DISMISSES WITHOUT PREJUDICE** plaintiffs' all causes of action directed towards those defendants.

official capacities as members of the Puerto Rico Police Department ("PRPD").  (Docket No. 3.)  Plaintiffs allege violations under Title VII of the Civil Rights Act for gender discrimination and sexual harassment, hostile work environment and retaliation. Pursuant to 42 U.S.C. § 1983 ("section 1983"), the plaintiffs also contend that defendants subjected them to violations of the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.  Plaintiffs further claim violations under articles 1802 and 1803 of the Civil Code as well as the special labor laws of Puerto Rico that prohibit discrimination at the workplace, and "any and all Puerto Rico legislation granting a cause of action for reprisals suffered by a 'whistleblower' of personnel and work related incidents of discrimination and harassment."  (Id.)

On February 16, 2010, defendants moved to dismiss the claims pursuant to section 1983 and the Whistleblower Protection Act of 1989 for failure to state a claim pursuant to Rule 12(b)(6). (Docket No. 12 at 2.)  Plaintiffs opposed the motion to dismiss. (Docket No. 23.)  For the reasons discussed below, the Court **GRANTS in part and DENIES in part** defendants' motion to dismiss.

**FACTUAL BACKGROUND**

The Court draws the following facts from the plaintiffs' forty-eight page amended complaint, (Docket No. 3), and takes them as true for the purpose of resolving defendants' motion:

Plaintiff Mulero is a policewoman currently working for the PRPD and is married to plaintiff Reyes.  (Docket No. 3 at 4.) Mulero began working as an investigator for the PRPD in its Property Division in 1996; she has been transferred on at least five occasions from one division to another, including robbery, property, juvenile affairs and special services.  Id. at 11.  None of the transfers was requested by Mulero.  Id. at 11-12.  In 2006, defendant Sergeant Luis J. Oquendo ("Oquendo"), who worked in the same division as Mulero, told her that she was "hot" and placed his right hand on her left thigh.  Id. at 12.  In April, 2006, Oquendo told Mulero, "I dare to be with you if you give me an opportunity without anybody else knowing, just you and me."[3]  Id.  In August, 2006, Oquendo commented that he would "justify" two negative memoranda regarding Mulero's low percentage in solving cases and that he was willing to assign her "fewer complaints" if she would go out with him.  Id. at 12-13.  In November, 2007, Oquendo made a comment to Mulero and her fellow officer, Christine Miller-Colon ("Miller"), openly referring to his penis, and in December of that year he tried to kiss and hug Mulero.  Id.  In 2008, Oquendo told Mulero that her pants looked very good on her and made a comment

_____

[3] The Court has taken the liberty to paraphrase various statements allegedly communicated to Mulero in order to improve the clarity and cogency of the allegations contained in plaintiffs' amended complaint.

"referring to the female organ exhibited by tight pants." <u>Id</u>. at 15.

On March 21, 2008, Mulero and Miller went to a restaurant business called "El Barril" in Piñones, regarding a recent theft. (Docket No. 3 at 16.)  The two women stayed for lunch; after lunch, another patrol car, driven by Captain Mario Rivera ("Captain Rivera"), arrived and parked behind the vehicle assigned to Mulero and Miller.  <u>Id</u>.  Captain Rivera told Mulero that Miller and Mulero were prohibited from moving the patrol vehicle assigned to them because they were drunk.  <u>Id</u>. at 17.  Plaintiffs' amended complaint states, "[u]pon such unsupported and frivolous accusation, plaintiff Mulero asked Captain Rivera, 'are you going to take us and have the pertinent test made to determine whether we are in fact intoxicated or not?'"  <u>Id</u>.  Captain Rivera replied that the two women "have an abandonment of service [sic] and . . . are drunk and . . . are not going to drive the patrol car."  <u>Id</u>.  After Captain Rivera asked Mulero and Miller for their names and other information, Miller asked Captain Rivera for his name and his badge number.  <u>Id</u>.  Captain Rivera answered in pertinent part, "I don't have to give you any information, you are insubordinate and I am a higher official, if you continue talking you are going to make things worse."  <u>Id</u>.  Captain Rivera then told Oquendo to come to Piñones "because these women are drunk and they cannot drive the patrol car . . . ."  <u>Id</u>. at 18.  On the phone, Miller told Oquendo,

"[w]e want you to have us blow because we have not been drinking."
Id.

After Oquendo arrived with two other agents and spoke with
Captain Rivera, he approached Mulero and "forcibly" took the patrol
car keys from her hands.  (Docket No. 3 at 18.)  He also told
Miller, "let's go" and "get in the patrol car."  Id.  Mulero and
Miller were ordered to get into the car with Agent Torres to be
taken to a police precinct.  Id. at 19.  At the precinct, Inspector
Fausto Morales did not ask Mulero or Miller to "blow to determine
if [they were] drunk" because he had "no evidence" and he believed
that neither of them appeared to be physically intoxicated.  Id.

On April 18, 2008, Mulero filed a formal complaint of sexual
harassment against Oquendo.  (Docket No. 3 at 21.)  On July 1,
2008, Mulero received an order for transfer dated March 27, 2008.
Plaintiff explained that she "had asked for a transfer because of
the sexual harassment going on . . . ."[4]  Id.  As of September,
2008, no action had been taken by the PRPD "to resolve or
investigate and finalize the complaint filed by plaintiff Mulero
regarding sexual harassment."  Id. at 22.

Plaintiffs allege various irregularities regarding the payment
of Mulero's salary and bonus checks.  On September 30, 2008, Mulero
did not receive her biweekly paycheck.  (Docket No. 3 at 22.)  She

---

[4] There is an inconsistency between this factual allegation
and plaintiffs' claim that Mulero did not request any of her
transfers within the PRPD.  (Docket No. 3 at 11-12.)

received her check for November 30, 2008, "at the payroll teller's
office where she had to go to get it, as opposed to the normal
procedure in which all employees receive their checks in their
respective workplaces." Id. at 27.  On December 5, 2008, Mulero
"came to know that all of the other employees of the [PRPD] had
received their bonus checks for December but [that] she had not
received hers." Id.  When she inquired as to why she had not
received her check via direct deposit, as had been done in previous
years, "she was told that Mr. Juan Carlos Martinez at the Leave
Division had not given the order to have plaintiff Mulero's bonus
deposited . . . ." Id.  When Mulero went to the Payroll Division
on December 15, 2008, she was told that "the check was at the
License Office with Mr. Juan Carlos Martinez and that he had not
authorized the check to be delivered to plaintiff Mulero." Id.
at 28.  On January 30, 2008, because Mulero had not received her
paycheck for the previous fifteen days, plaintiff Reyes "had to go
up again to the Payroll Office to seek and find out why the check
had not been issued and finally the check was provided with no
explanation for not having produced it in a normal matter." Id.
at 30.

Plaintiff Mulero has taken the following actions to address
the alleged sexual harassment since 2006:  Mulero had a meeting
with Lieutenant Fernandez, the Sexual Harassment and Domestic
Violence Office Director, and Sergeant Lasanta, Mulero's

supervisor, to discuss the alleged sexual harassment by Oquendo,
(Docket No. 3 at 14); she "formally and/or personally and/or
indirectly through correspondence complained" about the alleged
sexual harassment to Sergeant Lasanta, Sergeant Johnny Acevedo-
Roman, the official investigator for the domestic violence and
sexual harassment bureau at the General Headquarters, Lieutenant
Jose Ocasio-Garcia, director of the property division of the San
Juan CIC, Inspector Jose Marrero-Rivera, director of the CIC of San
Juan, and Lieutenant Vilma Fernandez, director of the sexual
harassment division of the PRPD, during April, 2008, id. at 21; she
sent at least eight letters to Pedro Toledo, the former PRPD
Superintendent, requesting intervention regarding the alleged
harassment and alleged retaliation suffered by plaintiff Mulero,
id. at 23-29; she sent copies of two such letters to Attorney Rosa-
Segui of the Legal Affairs Office of the Police and to Lieutenant
Vilma Fernandez, id. at 24; she sent at least four letters to
Superintendent Toledo informing him that she had not received her
September 30, 2008 paycheck, id. at 25-26, 28; she told
Superintendent Toledo that he and the PRPD "were ignoring the
regulations that established a public policy procedure for the
filing of sexual harassment complaints in Puerto Rico under
regulation number 6508 approved on August 20, 2002," id. at 29; she
informed Superintendent Toledo that she "received her check for
November 30, 2008, at the payroll teller's office where she had to

go to get it, as opposed to the normal procedure by which all employees receive their checks, id. at 27; she filed a complaint, which has not been resolved by the PRPD, with Miller, against Captain Rivera and Oquendo regarding the incidents on March 21, 2008, id. at 26; she informed current Superintendent Jose Figueroa-Sancha that the sexual harassment complaint had yet to be resolved and that Mulero was fearful for her personal security *vis à vis* Oquendo, id. at 30-39; she requested reasonable accommodation, id. at 33, 39; and she wrote letters to Superintendent Figueroa-Sancha, Jose Rosa-Carrasquillo, Jose Rivera-Diaz and Margarita Moris[5] explaining that she had requested intervention regarding the alleged unjustified transfer.  Id. at 39.

## PROCEDURAL BACKGROUND

Plaintiffs filed their amended complaint on November 17, 2009. (Docket No. 3.)  First, plaintiffs charge the Puerto Rico Police Department, under vicarious liability pursuant to Title VII of the Civil Rights Act and article 1803 of the Civil Code, with failure to provide for an adequate and viable procedure to channel complaints of sexual harassment, as well as with failure to establish a meaningful manner to seek redress for acts and omissions constituting a hostile working environment and acts of

---

[5] Plaintiffs provide no further description about Jose Rosa-Carrasquillo, Jose Rivera-Diaz or Margarita Moris, including their job titles, responsibilities, or connections to this lawsuit.

retaliation endured by plaintiffs.[6] (Docket No. 3 at 43.) Second, pursuant to section 1983, plaintiffs charge all defendants individually with acting under color of law and violating plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. Id. at 43-44. Third, plaintiffs charge all defendants with violating plaintiffs' rights pursuant to articles 1802 and 1803 of the Civil Code as well as pursuant to Puerto Rico special labor laws that include "any and all Puerto Rico legislation granting a cause of action for reprisals suffered by a 'whistleblower' of personnel and work related incidents of discrimination and harassment."[7] Id. at 44-45.

Defendants base their motion to dismiss on the following grounds: (1) plaintiffs fail to state a claim under which relief

---

[6] As previously discussed, the Court need not address this cause of action, because the Court has already dismissed defendant Puerto Rico Police Department.

[7] The Court notes that the amended complaint's structuring of its causes of action is confusing at best and fails to link the factual allegations it contains to specific constitutional or statutory violations, as distinct from the prayer for relief. The second cause of action fails to charge a particular defendant(s) with violation of a specific amendment. Claims alleging a First Amendment violation, a Fourth Amendment violation, a Fifth Amendment violation or a Fourteenth Amendment violation ought to be distinct. The supervisory liability claims ought to cite specific facts supporting the liability of each supervisor defendant. As the amended complaint now reads, the plaintiffs' attorney has failed to label claims diligently or properly, leaving them implied or suggested by the narrative of alleged facts, such that those claims must now be properly identified by this Court. The liberal nature of Rule 8(e) is no defense for lazy lawyering.

can be granted regarding all section 1983 claims against the
defendants; (2) plaintiffs fail to state a claim under which relief
can be granted pursuant to the Whistleblower Protection Act of
1989; (3) the PRPD is entitled to sovereign immunity regarding all
claims brought under local statutes;[8] and (4) plaintiffs fail to
state a claim upon which relief can be granted pursuant to Puerto
Rico Law 100 and Law 426.  (Docket No. 12 at 2-23.)

**DISCUSSION**

**I.    UNNAMED DEFENDANTS**

As an initial matter, the Court addresses the unnamed
defendants who appeared on the plaintiffs' amended complaint but
have since been unaddressed either in a motion from plaintiffs to
amend their complaint or to request additional time to serve those
defendants.  Further, the plaintiffs have failed to show good cause
for their failure to name and serve the unnamed defendants within
the time specified (120 days) by the Federal Rules.  Pursuant to
the Federal Rules of Civil Procedure,[9] therefore, the Court

---

[8] Because the Puerto Rico Police Department was dismissed from
the case at bar pursuant to the Court's order dated May 17, 2010,
(Docket No. 36), the Court need not discuss sovereign immunity.

[9] Fed.R.Civ.P. 4(m) in pertinent part provides:

If a defendant is not served within 120 days after
the complaint is filed, the court — on motion or on its
own after notice to the plaintiff — must dismiss the
action without prejudice against that defendant or order
that service be made within a specified time.

**DISMISSES WITHOUT PREJUDICE** all unnamed defendants in the amended complaint.

## II.  PLAINTIFFS' STANDING UNDER SECTION 1983

The Court finds that plaintiff Reyes and the conjugal partnership composed of Mulero and Reyes lack standing to sue for the violation of Mulero's constitutional rights under section 1983. Article III of the United States Constitution limits standing in federal courts to persons who have suffered an injury in fact; recovery is not ordinarily permitted for the injury of another. Allen v. Wright, 468 U.S. 737, 751 (1984); See also Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 17-18 (2004).  A claim under section 1983 must allege an injury to a cognizable interest, and that injury must be "causally related to the challenged conduct" such that the injury may be addressed by the litigation in question.  Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir. 2006). Only plaintiff Mulero meets these stringent requirements, allowing this Court's jurisdiction.

"There is no absolute constitutional right to enjoy the companionship of one's family members free from all encroachments by the state." Soto v. Flores, 103 F. 3d 1056, 1062 (1st Cir. 1997).  Although it is alleged that plaintiff Reyes and plaintiffs' conjugal partnership allegedly incurred medical expenses and suffered extreme mental anguish, emotional duress, psychological instability, frustration, anxiety, and loss of self esteem and self

respect, (Docket No. 3 at 43), "the Constitution does not protect against all harms." <u>Soto</u>, 103 F. 3d at 1062. Because neither plaintiff Reyes nor plaintiffs' conjugal partnership were deprived of a constitutionally protected interest, they may not bring section 1983 claims on their own behalf. <u>See</u> <u>id</u>. ("The question is not one of a degree of suffering, but whether the plaintiff can establish a violation of a federal right."); <u>see</u> <u>also</u> <u>Sanchez-Nuñez v. P.R. Elec. Power Auth.</u>, 509 F. Supp. 2d 137, 151 (D.P.R. 2007). Accordingly, all claims alleged pursuant to section 1983 by plaintiff Victor Reyes-Raspaldo and the conjugal partnership between plaintiff Mulero and plaintiff Reyes are hereby **DISMISSED with prejudice.**

## III. MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95 (1st Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007)). To avoid dismissal, the complaint must contain factual allegations that "raise a right to relief above the speculative level," or in other words, plaintiffs

must "nudge[] their claims across the line from conceivable to plausible."[10] Twombly, 550 U.S. at 570.

The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiffs' favor. See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the complaint's allegations. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." McCoy v. Massachusetts Institute of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. Id. at 23 (citing Correa Martinez, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

---

[10] Notably, the U.S. Supreme Court "disavowed the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a 'complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in relief of his claim which would entitle him to relief.'" Margo Caribe, Inc., 490 F.3d at 95-96 (citing Twombly, 550 U.S. at 562-63).

**IV.  42 U.S.C. § 1983**

Plaintiffs' second cause of action alleges that defendants are liable to plaintiff Mulero pursuant to section 1983 for violations of the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.   (Docket No. 3 at 44.) "Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right." Omni Behavioral Health v. Miller, 285 F.3d 646, 650-51 (8th Cir. 2002); see also Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000).  It is well settled that in order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements:  (1) that the defendant acted under color of state law; (2) that the plaintiff was deprived of federally protected rights, privileges, or immunities; and (3) that the defendant's alleged conduct was causally connected to the plaintiff's deprivation. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989).  To succeed in a section 1983 action, therefore, a plaintiff must prove that the defendant's actions were a cause in fact or a proximate cause of the plaintiff's injury. See Collins v. City Harker Heights, 503 U.S. 115 (1992). A plaintiff must also "indicate any personal action or inaction by a defendant . . . within the scope of . . . his responsibilities that would make him personally answerable in

damages under section 1983." See Pinto v. Nettleship, 737 F.2d 130, 133 (1st Cir. 1984).

The first requirement is easily satisfied here because Puerto Rico is considered a state for section 1983 purposes, Redondo-Borges v. United States Dep't. of Hous. & Urban Dev., 421 F.3d 1, 7 (1st Cir.2005), and it is undisputed that the defendants are officers of the Commonwealth of Puerto Rico.  (Docket No 3.) Defendants contest the second and third prongs, and the Court analyzes each in turn.

Because plaintiff Mulero holds defendants accountable due to their supervisory positions, the Court first examines the issue of supervisory liability under section 1983.  Second, the Court addresses whether Mulero has properly alleged claims under section 1983 for violations of the First, Fourth, Fifth and Fourteenth Amendments, respectively.[11]

A.   **SUPERVISORY LIABILITY**

Under section 1983, supervisory liability cannot be predicated on the theory of *respondeat superior*; supervisors may

---

[11] Once again, the Court takes a dim view of plaintiffs' counsel's failure to specify the theories upon which plaintiff Mulero relies for each and every Constitutional Amendment cited in the amended complaint.  Counsel seems to view the Constitution as merely a buffet table of violations ripe for listing in any complaint, leaving the Court to fill in the logical blanks.  Given plaintiff's counsel's failure to link the various factual allegations to specific constitutional violations, the Court has, where easily possible, connected the factual allegations to the most likely theory of liability.

only be held liable on the basis of their own acts or omissions.
Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005).
Nonetheless, a supervisor may be liable under section 1983 if he or
she formulates a policy or engages in a practice that leads to a
civil rights violation committed by another.  Camilo-Robles v.
Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998).

        Supervisory liability may be found either where the
supervisor directly participated in the unconstitutional conduct or
where the supervisor's conduct amounts to "tacit authorization."
See Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999).  A
plaintiff must show that each individual supervisory defendant was
involved personally in the deprivation of constitutional rights
because no *respondeat superior* liability exists under section 1983.
Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir.
1994); see also Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir.
1984).  Actual knowledge of the offending conduct is not needed for
a supervisor to be liable; a supervisor's behavior may be deemed
liable "by formulating a policy, or engaging in a custom, that
leads to the challenged occurrence."  Maldonado-Denis, 23 F.3d
at 582.  A supervisor may thus be liable "for the foreseeable
consequences of such conduct if he would have known of it but for
his deliberate indifference or willful blindness, and if he had the
power and authority to alleviate it."  Id.

Civil No. 09-1652 (FAB)                                          17

        Absent  direct  participation,  a  supervisor  may  be  held
liable  where:   (1)  the  behavior  of  his  subordinates  results  in  a
constitutional  violation,  and  (2)  the  supervisor's  action  or
inaction  was  affirmatively  linked  to  the  behavior  in  the  sense  that
it  could  be  characterized  as  supervisory  encouragement,  condonation
or  acquiescence,  or  gross  negligence  amounting  to  deliberate
indifference.  <u>Pineda v. Toomey</u>, 533 F.3d 50, 54 (1st Cir. 2008);
<u>see also</u> <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 44 (1st Cir.1999);
<u>Hernandez-Lopez v. Pereira</u>, 380 F.Supp.2d 30, 34-35 (D.P.R.2005).
"The  'affirmative  link'  requirement  contemplates  proof  that  the
supervisor's  conduct  led  inexorably  to  the  constitutional
violation."  <u>Hegarty v. Somerset County</u>, 53 F.3d 1367, 1379-80 (1st
Cir. 1995).   Deliberate  indifference  "will  be  found  only  if  it
would  be  manifest  to  any  reasonable  official  that  his  conduct  was
very  likely  to  violate  an  individual's  constitutional  rights."
<u>Id</u>., 53 F.3d at 1380.

        A  supervisor  may  also  be  held  liable  where  he  or  she
displays  deliberate  indifference  to  an  inferior  officer's
demonstrated  propensity  toward  violent  conduct,  and  there  is  a
causal  connection  between  that  indifference  and  the  alleged
misconduct.  <u>Barreto-Rivera v. Medina-Vargas</u>, 168 F.3d 42, 49 (1st
Cir. 1999).  For example, a supervisor may be liable when there is
a  known  history  of  abuse  to  alert  him  or  her  of  an  ongoing
violation  and  he  or  she  fails  to  take  a  corrective  action,  such  as

better training or closer oversight. Maldonado-Denis v.
Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

       Plaintiffs raise various claims that fall under the
umbrella of supervisory liability. Those claims include that
Mulero's supervisors: failed to enforce regulations that prohibit
sexual harassment in the workplace; failed to comply with PRPD
regulations, thus failing to protect Mulero; permitted PRPD
officers to engage in an unlawful practice or custom; failed to
take remedial action when plaintiff Mulero informed them of sexual
harassment and retaliation by fellow police officers; failed to
reply to, investigate, or otherwise acknowledge, the numerous
letters that Mulero sent regarding the alleged sexual harassment
and hostile environment she endured, as well as transfers and
withholding of her paycheck; and engaged in a series of retaliatory
actions against Mulero. (Docket No. 3.)

       Although plaintiffs allege wrongdoings by the defendants,
they fail to identify the "supervisory defendants" in any of
Mulero's causes of action. Instead, at the outset of the amended
complaint, plaintiffs describe the positions held by each
defendant. Some of these defendants have titles indicating that
they hold a supervisory position: Vilma Fernandez, "Director" of
the sexual harassment division of the PRPD; Milton Oquendo,
"Director" of the Vigilante Division; Jose Figueroa-Sancha,
"Superintendent" of Police; Jose Marrero-Rivera, "Director" of the

Civil No. 09-1652 (FAB)                                                    19

CIC; Jose Ocasio-Garcia, "Director" of the Property Division of the San Juan CIC; Laura Rechani, "Director" of the PRPD's Human Resources Office; and Luis A. Trujillo-Rodriguez, "Interim Director" of the Vigilance Office. Thus the Court is left to make inferences that those defendants with supervisory positions are those targeted for plaintiff Mulero's supervisory liability claims. The causes of action themselves, however, do not specify these individuals as supervisors specifically liable under section 1983; the causes of action fail to assign supervisory liability to any individual defendant.

     Plaintiffs' basis for supervisory liability is that "the behavior of the subordinate Sergeant Oquendo resulted in a constitutional violation and the officials' actions and/or omissions were affirmatively linked. Officials were notified of the alleged violations and took no action to confront the problem that required taking affirmative steps." (Docket No. 23 at 6.) As to those defendants whose supervisory liability is alleged only as a consequence of their job titles, the plaintiffs' pleadings assert nothing but legal conclusions, and are therefore insufficient to sustain the claims of supervisory liability. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) (holding that "while legal conclusions can provide the framework of a complaint, they must be well-supported by factual allegations"). Although plaintiffs raise specific facts in the amended complaint regarding the actions and

omissions of, as well as plaintiff Mulero's communication with, Sergeant Rosaura Lasanta, Vilma Fernandez, Leovigildo Vazquez-Bonilla, Milton Oquendo, Jose Figueroa-Sancha, Jose Marrero-Rivera, Jose Ocasio-Garcia, Captain Mario Rivera, Laura Rechani, Luis A. Trujillo-Rodriguez, Jose Luis Ramirez-Ramos, and Oliberto Rivera-Rivera, the facts as alleged do not establish a claim which can survive a motion to dismiss.

The First Circuit Court of Appeals, relying on the Supreme Court's holding in Iqbal, recently found that the pleadings against a defendant Mayor were deficient for supervisory liability: Despite the fact that the Mayor promulgated a policy and was present for, and participated in, the contested action resulting from that policy, the First Circuit Court of Appeals held that the pleadings did not "involve a policy of the Municipality for which he is responsible" nor did the pleadings "rest on his personal conduct." Maldonado v. Fontanes, 568 F.3d 263, 273 (1st Cir. 2009). The Court in Maldonado reasoned that the Mayor could not "be held responsible for violations of the plaintiffs' . . . rights committed by subordinate municipal employees or workers" and found no "affirmative link" between the "behavior of a subordinate and the action or inaction of his supervisor." 568 F.3d at 273.

In this case, the plaintiffs reference the sexual harassment claim policy that the supervisory defendants allegedly ignored that would have prevented constitutional violations, and

Civil No. 09-1652 (FAB)                                                        21

also offer details regarding how and why Mulero's supervisors
should have or did know about the alleged violations.  Supervisory
liability, however, "lies only where an affirmative link between
the behavior of a subordinate and the action or inaction of his
supervisor exists such that the supervisor's conduct led inexorably
to the constitutional violation."  <u>Maldonado</u>, 568 F.3d at 275
(quotations and citations omitted).  Given the strict standard set
by <u>Maldonado</u>, the Court finds that plaintiffs' allegations are
similarly deficient to establish an "affirmative link" between
Orquendo's alleged behavior and the inaction of PRPD supervisors
"such that the supervisor's conduct led inexorably to the
constitutional violation."  <u>See</u> <u>id</u>.  Accordingly, all claims for
supervisory liability are hereby **DISMISSED.**

    **B.   FIRST AMENDMENT**

       "The First Amendment's guarantee of freedom of speech
protects government employees from termination because of their
speech on matters of public concern."  <u>Bd. of County Comm'rs. v.</u>
<u>Umbehr</u>, 518 U.S. 668, 675 (1996) (citing <u>Connick v. Myers</u>, 461 U.S.
138, 146 (1983)).  "At the same time, that employee's free speech
rights must be balanced against 'the interest of the State, as an
employer, in promoting the efficiency of the public services it
performs through its employees.'"  Torres-Rosado v. Rotger-Sabat,
335 F.3d 1, 11 (1st Cir. 2003) (citing <u>Pickering v. Bd. of Educ.</u>,
391 U.S. 563, 568 (1968); <u>see</u> <u>also</u> <u>Rankin v. McPherson</u>, 483 U.S.

Civil No. 09-1652 (FAB)                                         22

378, 384 (1987); Connick, 461 U.S. at 140.  Plaintiffs allege that
defendants' actions violated Mulero's First Amendment protected
speech rights.  (Docket No. 3 at 44.)  The Court understands the
First Amendment allegations to allude to the complaints Mulero made
to her supervisors in both written and in verbal form regarding the
sexual harassment she allegedly endured.[12]

　　　　The First Circuit Court of Appeals employs a three-part
test to determine whether a public employee has an actionable claim
for violation of her First Amendment right to free speech:

> (1) whether the speech involves a matter of
> public concern; (2) whether, when balanced
> against each other, the First Amendment
> interests of the plaintiff and the public
> outweigh the government's interest in
> functioning efficiently; and (3) whether the
> protected speech was a substantial or
> motivating factor in the adverse action
> against the plaintiff.

Rosado-Quiñones v. Toledo, 528 F.3d 1, 5 (1st Cir. 2008).

　　　　To meet the first step, Mulero must show two elements:
(a) that she spoke as a citizen and (b) that her speech was on a
matter of public concern.  See Curran v. Cousins, 509 F.3d 36, 44-
45 (1st Cir. 2007); citing Garcetti v. Ceballos, 547 U.S. 410
(2006).  If the answer to the first (two-element) part is no,
Mulero has no First Amendment cause of action based on her
employer's reaction to the speech.  See Curran, 509 F.3d at 45.

_____

[12] The Court makes this assumption because plaintiffs do not
clearly articulate which facts support their First Amendment claim
in their amended complaint.

Whether Mulero's speech involves a "matter of public concern" "is a case-specific, fact-dependent inquiry." Id. at 46.  If her speech involved matters of personal interest instead of matters of public concern, "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 147.  In determining whether Plaintiff Mulero's speech implicates public concerns, the Court analyzes "the content, form, and context of [the speech], as revealed by the whole record." Id. at 147-48.

        Defendants argue that plaintiffs' First Amendment claim must be dismissed because they fail to allege that Mulero spoke as a citizen on any matter of public concern. (Docket No. 12 at 10.) Plaintiffs' response fails to address altogether the grounds on which Mulero's First Amendment claim rests.[13]  (Docket No. 23.)

        The Court finds that plaintiff Mulero fails to meet the first prong of the First Circuit Court of Appeals' three-part test. Plaintiff Mulero's allegation that her First Amendment rights were violated when PRPD personnel punished her for claiming that she had been harassed by a police sergeant fails to "even approach matters of inherent public concern in the context of law enforcement, such

_____

        [13] It is clear from the amended complaint and plaintiffs' complete failure to respond to defendants' First Amendment arguments that they merely tossed in the First Amendment claim in a laundry list of section 1983 violations.

as 'official malfeasance, abuse of office, and neglect of duties.'"
Rosado-Quiñones, 528 F.3d at 5 (citing Curran, 509 F.3d at 46).  In
Rosado-Quiñones, a PRPD officer sued Department officials pursuant
to section 1983 "claiming that his superiors violated his First
Amendment rights when they assigned him to new job duties,
allegedly in retaliation for his having filed a lawsuit against
them. . . ."  528 F.3d at 2.  The First Circuit Court of Appeals
found that the officer's complaints did not constitute protected
speech because they were "replete with implications that PRPD
personnel held personal animosity toward . . . [the officer, which]
does not even approach matters of inherent public concern in the
context of law enforcement, such as official malfeasance, abuse of
office, and neglect of duties."  Id. at 5.  Because the officer's
labor harassment claims did not "implicate the ability of PRPD
personnel to carry out their responsibility to the public, i.e.,
the provision of competent law enforcement services," id., the
First Circuit Court of Appeals found that the officer's "lawsuit
did not constitute speech on a matter of public concern, and as
such, he ha[d] no First Amendment free speech challenge to his
transfer out of the CIC."  Id. at 6.

        Plaintiff Mulero's letters and verbal complaints to her
supervisors similarly "do not implicate the ability of PRPD
personnel to carry out their responsibility to the public, i.e.,
the provision of competent law enforcement services."

Civil No. 09-1652 (FAB)                                              25

Rosado-Quiñones, 528 F.3d at 5.    Rather, Mulero's letters
complaining about the harassment and transfers she experienced in
the workplace are "classic example[s] of speech concerning internal
working conditions affecting only the speaker and co-workers." Id.
(citing the district court's finding in Rosado-Quiñones, 2007 WL
438770, at *5).    Furthermore, the record does not reveal any
manifestation of community concern over the internal workings of
the PRPD, and the form of plaintiff Mulero's speech does not
suggest a subjective intent to contribute to public discourse. See
Rosado-Quiñones, 2007 WL 438770 at *5.

It is clear that because plaintiff Mulero's letters and
verbal complaints did not constitute matters of public concern, she
has no basis upon which to bring a First Amendment claim. See
Rosado-Quiñones, 528 F.3d at 6.    Because the Court finds that
Mulero's speech did not address matters of public concern, it need
not reach the remaining second or third prongs of the test. See
id. at 5. Accordingly, defendants' motion to dismiss plaintiffs'
First Amendment claim pursuant to section 1983 is **GRANTED** and
Plaintiffs' First Amendment claim is **DISMISSED**.

C.    **FOURTH AMENDMENT**

Defendants argue that plaintiffs' amended complaint fails to state a claim under the Fourth Amendment.[14]   (Docket No. 12 at 11.)   Specifically, defendants contend that plaintiffs fail to establish a seizure, illegal arrest, or use of excessive force by any of the defendants.[15]   (Docket No. 12 at 11.)   Plaintiffs respond that the events that took place on March 21, 2008, however, constituted a violation of Mulero's "right to be free from unreasonable and abusive disturbances, searches, and illegal intrusions."   (Docket No. 23 at 11.)

"The primary purpose of the Fourth Amendment is 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'"  U.S. v. Ford, 548 F.3d 1, 4 (1st Cir. 2008) (internal citations

---

[14] U.S. Const. Amend. IV. states:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

[15] The parties only address the Fourth Amendment claims for search and seizure, illegal arrest, and excessive force.  Plaintiff Mulero's allegations that she was detained in a police car and transported to a police precinct against her will under false accusations of intoxication, however, could possibly be sufficient for a claim of malicious prosecution.  See, e.g., Colon-Andino v. Toledo-Davila, 634 F. Supp. 2d 220, 234-35 (D.P.R. 2009).

omitted).   "Searches  and  seizures  by  government  employers  or
supervisors  of  the  private  property  of  their  employees . . . are
subject  to  the  restraints  of  the  Fourth  Amendment."  O'Connor v.
Ortega, 480 U.S. 709, 715 (1987).   "[A] person  has  been  'seized'
within the meaning of the Fourth Amendment only if, in view of all
of  the  circumstances  surrounding  the  incident,  a  reasonable  person
would  have  believed  that  he  was  not  free  to  leave."   U.S. v.
Mendenhall,  446 U.S. 544, 554 (1980).   A  "reasonable person might
not  believe  [she]  was  free  to  leave  when  faced  with  'the
threatening  presence  of  several  officers,  the  display  of  a  weapon
by  an  officer,  some  physical  touching  of  the  person  of  the  citizen,
or  the  use  of  language  or  tone  of  voice  indicating  that  compliance
with  the  officer's  request  might  be  compelled.'"   Natal-Rosario v.
Puerto Rico Police Dep't., 639 F.Supp.2d 174, 183 (D.P.R. 2009)
(citing Mendenhall, 446 U.S. at 554).   Intrusions  upon  personal
privacy,  however,  "do  not  invariably  implicate"  the  Fourth
Amendment, because "such intrusions cross the constitutional line
only  if  the  challenged  conduct  infringes  upon  some  reasonable
expectation of privacy."  Vega-Rodriguez v. Puerto Rico Tel. Co.,
110 F.3d 174, 178 (1st Cir. 1997).   The  Fourth  Amendment  is  thus
implicated  only  if  the  defendants'  conduct  infringed  on  "an
expectation  of  privacy  that  society  is  prepared  to  consider
reasonable."  O'Connor, 480 U.S. at 715 (internal citation and
quotation  omitted).   Whether  a  seizure  is  reasonable  is  a

situational inquiry, requiring a "balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975).

Defendants contend that plaintiffs fail to establish a seizure under the Fourth Amendment. (Docket No. 12 at 11.) Plaintiffs claim, however, that Sergeant Oquendo restricted Mulero's freedom on March 21, 2008 by abusing his power as a sergeant and supervisor by ordering Mulero to "get into the patrol car" based on unsupported accusations by Captain Rivera, and by transporting her to the Mounted Police Precinct without any evidence of wrongful conduct. (Docket No. 3 at 19.) The Court finds that plaintiffs have pleaded sufficient facts to support a plausible Fourth Amendment claim that the events on March 21, 2008, constituted a seizure. Plaintiff specifically assert that Captain Rivera's accusations were "unsupported and frivolous," id. at 17; that he told plaintiff Mulero and Agent Christine Miller, "you have an abandonment of service and you are drunk and you are not going to drive the patrol car" and "you are insubordinate and I am a higher official, if you continue talking you are going to make things worse," id.; and that Miller stated, "[w]e want you to have us blow because we have not been drinking." Id. at 18. Plaintiffs further state that Oquendo "forcibly took the patrol car keys away from Mulero's hand without saying a word and told Miller, "let's

Civil No. 09-1652 (FAB)                                            29

go" and "get in the patrol car," _id._; that plaintiff Mulero and
Miller were ordered to get into Agent Luis Torres-Colon's patrol
car, _id._ at 19; and that Agent Torres-Colon took Mulero to the
Mounted Police Precinct against her will.   _Id._

          The events of March 21, 2008, as set forth in the amended
complaint, are well-pleaded factual allegations that establish "a
plausible entitlement to relief" under the Fourth Amendment.  It is
plausible that plaintiff Mulero was compelled to enter Agent
Torres-Colon's police car, compelled to be taken to the Mounted
Police Precinct, and, once there, felt unable to leave.  Of all
defendants, however, only Captain Mario Rivera and Sergeant Luis J.
Oquendo were involved in the events of March 21, 2008.
Accordingly, plaintiff's Fourth Amendment claims against Captain
Rivera and Oquendo will not be dismissed.  The amended complaint is
completely devoid, however, of any facts linking the remaining
defendants to any violation of the Fourth Amendment.  Plaintiffs'
Fourth Amendment seizure claim against defendants Sergeant Rosaura
Lasanta, Vilma Fernandez, Leovigildo Vazquez-Bonilla, Milton
Oquendo, Jose Figueroa-Sancha, Jose Marrero-Rivera, Jose Ocasio-
Garcia, Laura Rechani, Luis A. Trujillo-Rodriguez, Jose Luis
Ramirez-Ramos, and Oliberto Rivera-Rivera, therefore, is hereby
**DISMISSED.**

          Defendants also argue that plaintiffs fail to establish
an illegal arrest under the Fourth Amendment.  (Docket No. 12

at 11.)  Plaintiffs claim, however, that on March 21, 2008,
defendant Captain Mario Rivera violated Mulero's Fourth Amendment
rights by initiating false accusations against her, charging her
with being drunk without investigating, and charging her with
abandoning official service.  (Docket No. 3 at 16-19; Docket No. 23
at 10-12.)  Captain Rivera called Oquendo to the Piñones restaurant
in connection with these charges, and Mulero was subsequently
ordered to "get in the patrol car" to be driven against her will to
a police precinct.  (Docket No. 3 at 18-19.)

         The Court's focus of inquiry in a section 1983 claim
based on an illegal arrest is whether the police had probable cause
for the arrest.  Valente v. Wallace, 332 F.3d. 30, 32 (1st Cir.
2003).  "[O]nce a law enforcement officer has probable cause there
is no illegal arrest under the law."  Aviles v. Dep't. of the Army,
666 F. Supp. 2d 224, 236 (D.P.R. 2009).  Although case law on
probable cause harbors ambiguity, "[t]he mercurial phrase 'probable
cause' means a reasonable likelihood."  Valente, 332 F.3d at 32
(citing Illinois v. Gates, 462 U.S. 213, 235 (1983)).  Probable
cause exists if "the facts and circumstances within the relevant
actors' knowledge and of which they had reasonably reliable
information would suffice to warrant a prudent person in believing
that a person has committed or is about to commit a crime."  Burke
v. Town of Walpole, 405 F.3d 66, 80 (1st Cir. 2005) (internal
quotations and citations omitted).  The Court applies an objective

test that "turns on what a reasonable police officer would conclude based on the evidence actually available at the time (and not on unknown facts or subsequent events)." Valente, 332 F.3d at 32 (citing Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996).

In this case, plaintiffs allege sufficient facts for a plausible illegal arrest claim by Mulero. The amended complaint not only contains details about the events, conversations, and interactions between plaintiff Mulero, Agent Miller, Captain Rivera and Sergeant Oquendo on March 21, 2008 regarding the allegedly false intoxication accusations, it also explicitly alleges that the policewomen offered to "blow" to be tested for intoxication levels, and that Inspector Fausto Morales, fifteen or twenty minutes later, declined to test them because he did not have any evidence supporting Captain Rivera's accusation.  (Docket No. 3 at 19.) Because plaintiffs set forth sufficient facts upon which probable cause could be determined, the Court does not dismiss Mulero's Fourth Amendment illegal arrest claim. As above, however, because the complaint is completely devoid of any facts linking any of the defendants other than Captain Rivera and Sergeant Oquendo to the Fourth Amendment violation, plaintiffs' Fourth Amendment illegal arrest claim against defendants Sergeant Rosaura Lasanta, Vilma Fernandez, Leovigildo Vazquez-Bonilla, Milton Oquendo, Jose Figueroa-Sancha, Jose Marrero-Rivera, Jose Ocasio-Garcia, Laura

Rechani, Luis A. Trujillo-Rodriguez, Jose Luis Ramirez-Ramos, and Oliberto Rivera-Rivera, therefore, is hereby **DISMISSED.**

Defendants further contend that plaintiffs have not set forth allegations pointing toward the use of excessive force under the Fourth Amendment by any of the defendants. (Docket No. 12 at 11.) To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed a level of force that was unreasonable under the circumstances. Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007). Whether the force employed is reasonable "must be judged from the perspective of the reasonable officer on the scene." Graham v. Conner, 490 U.S. 386, 396 (1989). The inquiry into the reasonableness of the officer is an objective one, determined "in light of the facts and circumstances" faced by the officer "without regard to their underlying intent or motivation." Id. at 397.

As stated above, plaintiffs allege that on March 21, 2008, Captain Mario Rivera parked behind the patrol car assigned to Miller and Mulero and accused them of being drunk. (Docket No. 3 at 16-19.) Later, Sergeant Oquendo, and two other PRPD agents appeared in Piñones in response to Captain Rivera's phone call to Oquendo requesting him to "show up here because these women are drunk and they cannot drive the patrol car." Id. at 18. Oquendo "forcibly took the patrol car keys" from Mulero's hands, told Miller to "get in the patrol car," and ordered Mulero to be

transported to a police precinct against her will. Id. at 18-19.
Given that plaintiff alleges that the entire prosecution against
her was fabricated and based on false accusations, no force at all
would be reasonable.  Accordingly, at this juncture, and without
further evidence, the Court finds that plaintiffs have stated a
claim of excessive force *vis à vis* Mulero in violation of the
Fourth Amendment as to defendants Captain Rivera and Sergeant
Oquendo.  As above, plaintiffs' Fourth Amendment excessive force
claim against defendants Sergeant Rosaura Lasanta, Vilma Fernandez,
Leovigildo Vazquez-Bonilla, Milton Oquendo, Jose Figueroa-Sancha,
Jose Marrero-Rivera, Jose Ocasio-Garcia, Laura Rechani, Luis A.
Trujillo-Rodriguez, Jose Luis Ramirez-Ramos, and Oliberto Rivera-
Rivera, therefore, is hereby **DISMISSED.**

   **D.   FIFTH AMENDMENT**

        Plaintiffs have conceded "that there are no facts alleged
in the Amended Complaint that support a claim under the Fifth
Amendment."  (Docket No. 23 at 12.)  Because the plaintiffs
"respectfully voluntarily dismiss[ed] this cause of action without
prejudice," (Docket No. 23 at 13), the Court hereby **DISMISSES**
plaintiff's claim pursuant to the Fifth Amendment, without
prejudice.

Civil No. 09-1652 (FAB)                                                    34

    **E.**    **FOURTEENTH AMENDMENT**

        **1.**    **DUE PROCESS CLAUSE**

        Plaintiffs allege that defendants violated Mulero's constitutional right not to be deprived of property without due process of law under the Fourteenth Amendment.  (Docket No. 3 at 44.)  The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that certain substantive rights – life, liberty, and property – "cannot be deprived except pursuant to constitutionally adequate procedures."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).  "Due process claims may take either of two forms:  'procedural due process' or 'substantive due process.'"  Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991).  Defendants argue that plaintiffs do not establish either a substantive or procedural due process claim.  (Docket No. 12 at 13.)  Because plaintiffs address only procedural due process

violations,[16] however, this Court does not evaluate any substantive due process claims.

        To establish a procedural due process claim, plaintiffs must show that Mulero had a liberty or property interest and that defendants, acting under color of state law, deprived her of that interest without a constitutionally adequate process.  Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991).  To have a constitutionally protected property interest in a benefit, "a person clearly must have more than an abstract need or desire for it.  He [or she] must have more than a unilateral expectation of it.  He [or she] must, instead, have a legitimate claim of entitlement to it."  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  Property interests are not created by

---

        [16] Plaintiffs' Response in Opposition to Motion to Dismiss states in pertinent part:

> Plaintiff Leyda Mulero has legitimate claims of procedural due process violations for being deprived of a protected interest and denied due process established in the PRDP's Policy and Procedural Manual which is grounded in Title VII and federal case law as well as local statutes . . .
>                        . . . .
>
> [The] incidents set forth in the amended complaint set forth multiple violations constituting deprivations of property without due process, particularly the deprivation of plaintiff Mulero's salary and bonuses . . . .

(Docket No. 23 at 7-10.)

the Constitution; "they are created and their dimensions are
defined by existing rules or understandings that stem from an
independent source such as state law – rules or understandings that
secure certain benefits and that support claims of entitlement to
those benefits." <u>Roth</u>, 408 U.S. at 577.

"In its procedural aspect, due process ensures that
government, when dealing with private persons, will use fair
procedures." <u>DePoutot v. Raffaelly</u>, 424 F.3d 112, 118 (1st Cir.
2005). "The fundamental requirement of [procedural] due process is
the opportunity to be heard at a meaningful time and in a
meaningful manner." <u>Bibiloni del Valle v. Puerto Rico</u>, 661
F.Supp.2d 155, 182 (D.P.R. 2009). "An essential principle of due
process is that a deprivation of life, liberty, or property be
preceded by notice and opportunity for hearing appropriate to the
nature of the case." <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470
U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citation and
internal quotation marks omitted).

Defendants contend that because plaintiffs fail to
identify any property interest of which Mulero has been deprived,
the Court must dismiss the due process claim. (Docket No. 12
at 14.) Specifically, defendants argue that Mulero was not
deprived of property, i.e. her employment, because she is still
working for the PRPD. (Docket No. 12 at 14.) Plaintiffs respond
that Mulero was *transferred* out of her normal work division without

any justified explanation, an action they allege invokes Fourteenth
Amendment protection.  Plaintiffs additionally allege that Mulero
was denied due process for the following reasons:  (1) the
defendants failed to adhere to procedures established in the PRDP's
Policy and Procedural Manual; (2) the defendants failed to provide
for and/or comply with an adequate and viable procedure to channel
sexual harassment complaints notwithstanding the existence and
legally binding regulation number 6508; (3) plaintiff Mulero made
repeated complaints to officials at PRDP about Oquendo's sexual
misconduct that were never investigated or acted upon; (4) members
of the PRDP failed to answer any of the numerous letters that
Mulero sent to PRDP officials; (5) Mulero was transferred out of
her normal work division without justified explanation; (6)
defendants withheld her December, 2008, bonus check; and (7) Mulero
did not receive her bi-weekly paycheck from September, 2008.
(Docket No. 23 at 6-10.)

        Defendants have not cited any authority demonstrating
that a transfer or any of the other factual allegations set forth
by plaintiffs are not  property interests in Puerto Rico.  Without
more guidance from the parties on this point, the Court will not at
this juncture dismiss plaintiff's Fourteenth Amendment claim on
those grounds.  Accordingly, defendants' motion to dismiss
plaintiff's section 1983 claims for deprivations of procedural due
process pursuant to the Fourteenth Amendment is hereby **DENIED.**

        2.    **EQUAL PROTECTION CLAUSE**

            Pursuant  to  the  Equal  Protection  Clause  of  the
Fourteenth  Amendment  "cities,  states  and  the  Federal  Government
must  exercise  their  powers  so  as  not  to  discriminate  between  their
inhabitants  except  upon  some  reasonable  differentiation  fairly
related  to  the  object  of  regulation."  <u>Mills v. Maine</u>, 118 F.3d 37,
46-47 (1st Cir. 1997).   "Equal protection of the laws means that
'no person or class of persons shall be denied the same protection
of the laws which is enjoyed by other persons or other classes in
the  same  place  and  under  like  circumstances.'"   <u>Walsh v.
Massachusetts</u>, 618 F.2d 156, 158 (1st Cir. 1980) (citing <u>Missouri
v. Lewis</u>,  101  U.S.  22,  31  (1879).   Defendants  contend  that
plaintiffs'  Equal  Protection  Clause  claim  must  be  dismissed  because
plaintiffs  fail  to  claim  membership  by  Mulero  in  a  protected  class
or  demonstrate  that  other  individuals,  similarly  situated,  were
treated  differently.   (Docket  No.  12  at  16.)   Plaintiff  counters
that  Mulero  claims  to  be  a  member  of  the  class  constituted  by
female  police  officers  and  that  she  was  the  victim  of  unequal
treatment  when  she  sought  "redress  of  her  complaints  according  to
PRPD  regulations  based  on  her  gender  and  based  on  her  willingness
to  come  forward  and  complain  about  such  violations."   (Docket
No. 23 at 13-14.)

            To prove a violation of the Equal Protection Clause,
a plaintiff must show that the defendant acted with discriminatory

intent.  Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 896 (1st Cir. 1988) (citing Washington v. Davis, 426 U.S. 229, 239-42 (1976)).  "Discrimination on the basis of gender violates the equal protection clause if the discrimination fails to 'serve important government objectives' and is not 'substantially related to achievement of those objectives.'"  Lipsett, 864 F.2d at 896 (quoting Davis v. Passman, 442 U.S. 228, 234-35 (1979)).  Because a showing of discriminatory intent is necessary to make out a claim of disparate treatment under Title VII, the analytical framework for proving discriminatory treatment pursuant to Title VII claims is equally applicable to claims of gender-based discrimination pursuant to the Equal Protection Clause.  See Pontarelli v. Stone, 930 F.2d 104, 113-14 (1st Cir. 1991), *abrogated on other grounds*, Graphic Comms. Int'l. Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 4-5 (1st Cir. 2001); Lipsett, 864 F.2d at 896; White v. Vathally, 732 F.2d 1037, 1039 (1st Cir.), *cert. denied*, 469 U.S. 933 (1984).

To prove a *prima facie* case of discrimination under Title VII, a plaintiff must establish by a preponderance of the evidence (1) that the plaintiff is within a protected class; (2) that his [or her] employer took an adverse action against him [or her]; (3) that [he or] she was qualified for the employment [he or] she held; and (4) that [his or] her position remained open or was filled by a person whose qualifications were similar to [his

or] hers.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802
(1973); Douglas v. J.C. Penney Co., 474 F.3d 10, 13-14 (1st Cir.
2007); Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 32 (1st
Cir. 1990).

     Defendants first argue that plaintiffs' Equal
Protection Clause claim is deficient because Mulero has not claimed
membership in a protected class.   (Docket No. 12 at 16.)
Plaintiffs respond that Mulero claims to be a member of a class of
female police officers.  (Docket No. 23 at 13.)  The Court agrees
with plaintiffs.   The amended complaint states that plaintiff
Mulero is a woman, which satisfies a "protected class" under the
McDonnell Douglas framework.  See Dragon v. Department of Mental
Health, Retardation & Hosp., 936 F.2d 32, 36 (1st Cir. 1991).

     Defendants' second contention is that plaintiffs
have not demonstrated that other individuals, similarly situated,
were treated differently than Mulero was treated.  (Docket No. 12
at 16.)  "A requirement for stating a valid disparate treatment
claim under the Fourteenth Amendment is that the plaintiff make a
plausible showing that he or she was treated differently from
others similarly situated.  A similarly situated person is one that
is roughly equivalent to the plaintiff in all relevant respects."
Estate of Bennett v. Wainwright, 548 F.3d 155, 166 (1st Cir.2008)
(internal citations and quotation marks omitted).  In order to
establish the equal protection claim, plaintiffs need to allege

facts indicating that the selective treatment Mulero suffered as a female was "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person," Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995) (citations omitted), and "that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Wojcik v. Mass. State Lottery Comm'n., 300 F.3d 92, 104 (1st Cir. 2002).

The Court finds that plaintiffs allege sufficient facts showing "a plausible entitlement to relief" pursuant to the Equal Protection Clause.  To demonstrate selective treatment, plaintiffs state that the manner in which Mulero received her November 30, 2008 paycheck, by going to the payroll teller's office, was "opposed to the normal procedure in which all employees receive their checks in their respective workplaces."  (Docket No. 3 at 27.)  They also state that "all of the other employees of the Police of Puerto Rico had received their bonus checks for December but [Mulero] had not received hers," and that upon inquiring as to why the check was not directly deposited like in previous years, "she was told that Mr. Juan Carlos Martinez at the Leave Division had not given the order to have plaintiff Mulero's bonus deposited."  Id.  Mulero further states that she did not receive her September 30, 2008 paycheck and that Mr. Juan Carlos

Martinez "had not authorized the check to be delivered to plaintiff Mulero." Id. at 28.  She "had always received direct deposit of her salary until she formally filed a complaint against Sergeant Luis Oquendo, [but] thereafter, Juan Carlos Martinez of the license office had been retaining her checks." Id.  In light of those factual allegations in plaintiffs' amended complaint, the Court finds that plaintiffs pleaded sufficient facts for plausible relief under the Fourteenth Amendment's Equal Protection Clause.

Accordingly, defendants' motion to dismiss plaintiff Mulero's section 1983 claim for equal protection violations pursuant to the Fourteenth Amendment is hereby **DENIED.**

## V.   WHISTLEBLOWER PROTECTION ACT OF 1989

Plaintiffs' third cause of action alleges that defendants are liable under "any and all Puerto Rico legislation granting a cause of action for reprisals suffered by a 'whistleblower' of personnel and work related incidents of discrimination and harassment." (Docket No. 3 at 45.)  Defendants move to dismiss those claims pursuant to the Whistleblower Protection Act of 1989 ("WPA") on the grounds that plaintiff Mulero is not an employee within the concept of the WPA and she has not exhausted administrative remedies as required by the statute.  (Docket No. 12 at 16-17.)  Plaintiffs respond only that they have set forth facts that establish defendants' violations under the WPA.  They do not offer any

corroborative facts or details in support of their argument. (Docket No. 23 at 2.)

Congress passed the Whistleblower Protection Act of 1989, codified in 5 U.S.C. § 2302, in order to "provide[] federal employees with the right to seek corrective action from the [Merit Systems Protection] Board ["MSPB"] whenever a personnel action has been taken in retaliation for certain whistleblowing activities." Fields v. DOJ, 452 F.3d 1297, 1302 (Fed. Cir. 2006) (internal citations omitted). Defendants argue that because plaintiff Mulero is not a federal employee as defined by 5 U.S.C. § 2105, she does not receive statutory protection under the WPA. (Docket No. 12 at 16-17.) Plaintiffs, as mentioned above, make absolutely no direct counter to defendants' argument. Their response in opposition to defendants' motion to dismiss, however, avers that defendants are "state officials," (Docket No. 23 at 6), acting under color of Puerto Rico law. (Id. at 5, 10.) Because plaintiffs have not alleged that defendants are federal employees, therefore, their claim pursuant to the WPA must be **DISMISSED**. See, e.g., Martinez-Rivera v. Ramos, 498 F.3d 3, 8-9 (1st Cir. 2007) (upholding the dismissal of a Fifth Amendment claim against defendant police officers because plaintiffs failed to allege that any of the defendants were federal actors).

Defendants also contend that plaintiffs' WPA claim should be dismissed because plaintiffs make no claim that they exhausted

administrative remedies required by the statute.  (Docket No. 12 at 17.)  The Court of Appeals for the Federal Circuit has held that the MSPB "has jurisdiction over whistleblower cases if the [employee] has exhausted administrative remedies before the OSC [Office of Special Counsel] . . . ."  _Fields v. DOJ_, 452 F.3d at 1302.  In this case, plaintiffs have failed to meet the exhaustion requirement of the WPA; because Mulero is "an employee who believes that she has been retaliated against based on her whistleblowing activities[,] [she] is required to first raise her claim with the Office of Special Counsel ("OSC"), which investigates the complaint."  See _Meuse v. Dep't. of Veterans Affairs_, 2010 U.S. Dist. LEXIS 56140 (M.A. 2010) (citing 5 U.S.C. § 1214(a)(3); _Stella v. Mineta_, 284 F.3d 135, 142 (D.C. Cir. 2002)).  "Under no circumstances does the WPA grant the District Court jurisdiction to entertain a whistle-blower cause of action brought directly before it in the first instance."  _Stella_, 284 F.3d at 142; see also _Ghaly v. United States Dep't. of Agric._, 228 F. Supp. 2d 283, 288-89 (S.D.N.Y. 2002).  Plaintiffs failed to exhaust administrative remedies regarding their claim under the WPA; their "only avenue for obtaining federal judicial review is through an appeal of a decision by the MSPB to the Federal Circuit."  See _Ghaly_, 228 F. Supp. 2d at 288.  Accordingly, their claim pursuant to the Whistleblower Protection Act of 1989 must be **DISMISSED.**

Case 3:09-cv-01652-FAB-JA   Document 46   Filed 08/09/10   Page 45 of 49

Civil No. 09-1652 (FAB)                                                45

## VI.   SUPPLEMENTAL STATE LAW CLAIMS

### A.   LAW 100

Puerto Rico's Law 100 seeks to prevent discrimination in the workplace by reason of age, race, color, religion, gender, social or national origin or social condition.  See P.R. Laws Ann. tit. 29 § 146.  Law 100 only applies to employers, and the term "employer" is defined as:

> [A]ny natural or artificial person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person.  It shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or enterprises.

Hernandez-Payero v. Puerto Rico, 338 F.Supp.2d 279, 282 (D.P.R. 2004) (citing P.R. Laws Ann. tit. 29, § 151 (1995)).

Law 100's "definition of employer specifically excludes government agencies from coverage unless they operate as private business or enterprises." Torres-Santiago v. Alcaraz-Emmanuelli, 553 F. Supp. 2d 75, 86 (D.P.R. 2008) (dismissing all Law 100 claims against the DTOP and its employee in his official capacity). Plaintiffs have not alleged, and there is no evidence from the record reflecting, that the PRPD is a government agency operating as a private business.  Because the defendants in this case are employees of PRPD, which is an arm of the state that does not function as a private business or enterprise, any Law 100 claim

against them in their official capacities must be dismissed.  _See_
_Hernandez-Payero_, 338 F.Supp.2d at 282.  Accordingly, the Court
**DISMISSES** plaintiffs' Law 100 claim against the defendants in their
official capacity.

          Contrary to defendants' argument in their motion to
dismiss (Docket No. 12 at 21), however, government defendants can
be sued in their individual capacities under Law 100.
_Torres-Santiago_, 553 F. Supp. 2d at 86; _Otero-Merced v. Preferred_
_Health Inc._, 680 F. Supp. 2d 388, 392 (D.P.R. 2010).  Law 100
allows supervisor liability on the president, actual employer,
owner, and "any other person responsible for the illegal conduct."
_Torres-Santiago_, 553 F. Supp. 2d at 86.  Defendants argue that the
individual defendants in this case are not plaintiff Mulero's
employer and thus any claims pursuant to Law 100 must fail.
(Docket No. 12 at 22.)  The cited case law, however, demonstrates
that under Law 100 individual employers or supervisors may be held
personally liable.  Therefore, defendants' request for dismissal of
plaintiffs' Law 100 cause of action against defendants in their
individual capacities is **DENIED.**

     **B.   THE PUERTO RICO WHISTLEBLOWER ACT (LAW 426)**

          Puerto Rico Law 426 "adopt[s] measures for the protection
of the rights of public employees and officials who disclose
information or testify on alleged improper or illegal acts
regarding the use of public property or funds that due to their

Civil No. 09-1652 (FAB)                                              47

nature constitute acts of government corruption, or that fall within the ethical conduct regulated by our legal system." Frederique-Alexandre v. Department of Natural and Environmental, 478 F.3d 433, 440 (1st Cir. 2007) (quoting P.R. Laws Ann. tit. 1, § 601 (2000)).  Plaintiffs' pleadings set forth only facts related to the discrimination, harassment, and retaliation that Mulero allegedly suffered as a result of her sexual harassment claim. Plaintiffs fail to make any allegation relating to the misuse of any "public property or funds" under the statute.  Because Law 426 is not expansively read to include public employees who denounce any unlawful act, plaintiffs' claim under Law 426 lacks any factual foundation.   See   Frederique-Alexandre,   478   F.3d   at   440. Accordingly, plaintiffs' claim under Law 426 as to all defendants is hereby **DISMISSED.**

**CONCLUSION**

    For the foregoing reasons, the Court **GRANTS in part and DENIES in part** defendants' motion to dismiss.

    Plaintiffs' section 1983 claims pursuant to the First and Fifth Amendments as to all defendants are **DISMISSED.**

    All of plaintiffs' Fourth Amendment claims against defendants Sergeant Rosaura Lasanta, Vilma Fernandez, Leovigildo Vazquez-Bonilla, Milton Oquendo, Jose Figueroa-Sancha, Jose Marrero-Rivera, Jose Ocasio-Garcia, Laura Rechani, Luis A. Trujillo-Rodriguez, Jose Luis Ramirez-Ramos, and Oliberto Rivera-Rivera are **DISMISSED.**

Defendants' request to dismiss plaintiffs' Fourteenth Amendment procedural due process and equal protection claims is **DENIED.**

All claims made pursuant to section 1983 by plaintiff Victor Reyes-Raspaldo and the conjugal partnership between plaintiff Mulero and plaintiff Reyes are **DISMISSED.**

All claims for supervisory liability are **DISMISSED.**

Plaintiffs' claim under the Whistleblower Protection Act of 1989 is **DISMISSED.**

Plaintiffs' Law 100 claim pursuant to all defendants in their official capacity is **DISMISSED.**

Defendants' request to dismiss plaintiffs' Law 100 claim against all defendants in their individual capacity, however, is **DENIED.**

Plaintiffs' claim under Law 426 (The Whistleblower Act) as to all defendants is **DISMISSED.**

The following claims survive:

1.    Plaintiff Mulero's Fourth Amendment claims against Captain Mario Rivera and Sergeant Luis J. Oquendo.

2.    Plaintiff Mulero's section 1983 claims for deprivations of procedural due process and equal protection pursuant to the Fourteenth Amendment.

3.    Plaintiff Mulero's Law 100 claims against the defendants in their individual capacities.

Civil No. 09-1652 (FAB)                                                    49

    4.    Plaintiffs' cause of action pursuant to article 1802 and 1803 of the Civil Code against all defendants.

    5.    Plaintiffs' cause of action pursuant to Puerto Rico law 17 against all defendants.

    6.    Plaintiffs' cause of action pursuant to Puerto Rico law 69 against all defendants.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 9, 2010.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE